153409, John R. Rogers v. Attorney General of the Presidential Service, Oral Arbitratory of the U.S. Department of Justice, and I am pleased to be speaking on behalf of Versailles. Mr. Brzezins will make his final comment. Thank you. Please support. My name is Frank Brzezins. I represent the plaintiff appellant, John Rogers, in this case, and I'm requesting three minutes for rebuttal. This is a case where the IRS entered into a formal negotiated written agreement which supplanted, replaced, and extinguished an earlier settlement agreement and release in sofar as a FOIA claim is concerned, and then after performing the terms of that subsequent agreement for many months, it decided to renege, and the trial court erred in this case by allowing the IRS to renege on that agreement. Did you do that? I'm sorry. Yeah, really. That's a whole new deal. Planted or replaced? Yes, Your Honor. I think one of the important points to recognize in this case is that there was a subsequent agreement made, subsequent to the release, and that subsequent agreement was actually made in court. Is that the rollout agreement? It's the Rule 26F agreement made in writing that was filed in the court, and then later the parties agreed to adopt and incorporate that agreement into the court's pretrial order. So it was a judicial agreement made long subsequent to the release that was memorialized in a court. You argued that in your brief. I did. Oh, yes. This is your estoppel argument. Well, it's not just estoppel. You can start with garden variety contract law and say that judicial agreements are treated as contracts, that subsequent agreements supplant, replace, and discharge the former agreement. That's a judicial agreement. Well, agreements made in court. For example, I have case law that says like a plea agreement. It's going to be treated as a contract, and if it's a subsequent agreement. Something sanctioned by the court. Yes. And in this case, it's formally negotiated. It's reduced to writing, agreed to by the parties, submitted to the court, and then later agreed to by the parties to be incorporated in a court order, and then later, the course of performance of that agreement is for many months, the parties perform the terms of the agreement. They honor the plaintiff's FOIA right. We engage in the rolling production system where they're given monthly. So think of the obvious, that they went, whoops, we have an out. We have an out. And doesn't the out trump the mistaken effort to comply with something that they had a release that said they don't have to? So that's the other side of it. And now have you respond. No, it doesn't provide an out. I bet you were going to say that. That is exactly what happened. We went through, really, if you start from the beginning, more than two years. During the administrative process, my guy makes a request. They go through the administrative process. They never once say, oh, you can't do this. There's a release. They honor his right. Then in a lawsuit, what do they do? They're in default for answer. I write them two reminder letters saying, hey, you haven't filed an answer in this case. And by failure to file an answer under the civil rules, they waive the affirmative defense. And I'm mindful of the fact that release and accord and satisfaction are affirmative defenses that must be raised by him. You say there's a waiver that you waive in the absence of filing an answer. And you know the argument that they raised it in their summary judgment motion. You say that, nevertheless, amounts to an unforfeitable waiver. In this case, it does. And here's why. We start with the proposition that under the federal rules, you waive an affirmative defense if you don't raise it in an answer. Then I'm mindful. You don't file an answer. Does that rule hold? Yeah, well, they're in default. And I actually filed a motion for default judgment that didn't get granted in this case. But I'm mindful of case law that says there is limited circumstances where a party can raise an affirmative defense for the first time in a motion for summary judgment. But if you look at the cases, they say two things have to be true. One is there can't be surprise. Two is there can't be prejudice. Now in this case, the surprise is self-evident. After I go two years of, yes, you have a right, yes, we're giving you a right, yes, we're searching for the records, yes, we're going to produce all the non-exempt, you go through that two years, including many months of the litigation, and then they go, whoops, I'm going to renege. That comes as a self-evident surprise. And when you look at the prejudice, the case law says when you drag a litigant through unnecessary litigation and litigation expense, that is prejudice. So in my case, why, if you're going to, if you're going to drag me through, if you're going to not unnecessarily drag me through all this unnecessary litigation, why don't you just say there's a release? And if you have the whoops afterthought, later, after you've waived it six ways from Sunday, after you've memorialized a written agreement, after the parties have entered into a... Obviously, it's my whoops. They didn't, I don't know that. No, it's exactly what, I mean, I use the unkinder word, renege. But to me, it's an, and in my brief, I called it an afterthought. They ambushed the plaintiff with an afterthought after two years of conduct that was continuous, conspicuous, and constant, that evidenced the contemplation and intent of the parties. If you do want to get, let's forget my subsequent agreement. Let's parse the words of the release. The court is supposed to look at the conduct of the parties when it's trying to determine the contemplation of the parties and the intent of the parties. Again, I start out with two years of conduct where the parties showed nobody contemplated that a FOIA that was unaccrued and unheard of at the time, FOIA claim had been released by this settlement agreement at the time. Wait a minute, you signed it. You signed the release. Oh yeah. You showed it existed. I'm not challenging the validity of the release. We signed the release and we will live with its terms. If you look at the terms of this release, Your Honor, it doesn't release a FOIA claim. Look what the trial court did. The trial court relies on the Thayer case, which is an unreported not-for-publication decision in which the release said, in black and white, I'm releasing a FOIA claim. That's not my case. I got a general release and it's not an unlimited general. You said it released all the claims. No, my release says it's limited to the release of claims that are for, upon, related to, or arising out of the civil forfeiture cases. Now let's parse those words. Is my... Wait a minute now. The FOIA request arises out of that as well. I mean all of this arises out of the same transactions and occurrences. It doesn't arise out of it. The FOIA claim relates to or is intertwined with whatever words we want to use and I mean speaking only for myself, it seems like your better argument might be that the affirmative defense of the government, based upon the release, was waived or not enforced or requested on a timely basis would seem to me to be your best argument. Oh, that is my best. If you ask me... But I'm not saying my colleagues agree with me here, so you should argue this as you think appropriate. But I'll take it in stages. If you ask me what is my strongest argument, my strongest argument would be waiver and I don't care if you call it waiver or a novation, that's the subsequent agreement. Isn't it true that the issue of the waiver could have been raised, it could have been raised at trial? It didn't have to come before that? My raising... No, by the IRS. My raising the argument that they waived this defense? No. I'm just going back to the fundamentals. Was it waived? Your stance is it was. Yes. And there was surprise and prejudice. The service has briefing that suggests that you could raise it even, it could be the first time at trial. Only if there's no surprise and no prejudice and as I've said earlier... I know that... Okay, I got you. You don't have to read... Only if, because that's the limiting factor there. And when I go back to parsing the words of the release, Your Honor, is it for the civil forfeiture cases? No, it's for records. Is it upon the civil forfeiture case? No, it's upon the Freedom of Information Act. Does it arise... Well, if you had written a titer... I'm sorry, what? You could have written a more general release that would have protected, assuming you're representing the IRS, you could have done a better job? I don't even think that's true because the limit on releases of unaccrued claims to me is public policy. So when we look at the public policy, federal courts many times look to state law for public policy. Public policy of the state of Ohio, if you consider the situs of that settlement agreement in Ohio, is against the release... Why did you sign it? I'm sorry? Why did you sign it? We signed it to settle a civil forfeiture case and get all my client's money back after nine years of abuse, Your Honor, where my client was never charged with so much as a parking ticket violation. They decided to give him all his stuff back, but they took all his stuff in June of 2003 and kept it for nine years with absolutely no grounds. And... Is that what the FOIA targets? It targets two things. Well, I mean, it's 37 pages and it goes back to 93. We know this. What does your client seek out of that? Records from after... I got that. To what end? He wants to know, how could this happen to an American citizen in this day and age? It's as simple as that, Your Honor. And when I look at the public policy pronounced in the President's Directive, in the Attorney General's Directive, to all the... He lived through it, so he knows how it could happen, right? No. You don't know how it happens. When the IRS comes to your house and takes everything you've ever worked for, keeps it for nine years, and never gets you to a court, they never indict you, never charge you, and give you a chance to vindicate yourself in a court. And then when they throw in the towel at the end, oh, my bad, here, take your stuff back, you walk away as an American citizen wondering, how did my government do that to me? And the prevailing policy under FOIA, when you look at the case law, you look at the President's Memorandum, you look at the Attorney General's Directive to all the agencies, is to lift the veil of secrecy so that an American citizen can, quote, know what his government is doing. In this case, the IRS says this citizen is not allowed to know what the government was doing to him. And there is no policy that would... I understand now. That would militate towards secrecy. I did not understand why the records mattered to you so much, but I see what your point is. I think in this case, the trial court did, actually, a lot of things that were erroneous. Matter of fact, I've got, to me, seven ways. A, they disregarded a subsequent formal negotiated agreement by sophisticated parties represented by competent counsel that supplanted the terms of the settlement agreement insofar as FOIA is concerned, anyhow. Number two, when interpreting the release, they disregarded the conduct of the parties that unequivocally showed that they never contemplated release of a FOIA claim. Number three, he interpreted the scope of the release to bar unaccrued claims that were not for, upon, or rising out of the civil forfeiture. This was for records. It was upon the Freedom of Information Act. It arose out of the denial, as the case law... It's tough to take that. It's tough for us to swallow that view that arising out of, I mean, that's tough to argue. When you look at tort law... Nothing would have happened. I know that's pretty, that could be specious at some point to say it, nothing, everything arose out of the other, out of the four forfeiture cases. When I think of what arising out of means, I think, like a garden variety tort case, it arises out of the negligence and the injury. It arises out of the wrong. The wrong in this case is the denial of a FOIA claim, so FOIA request, that's when the cause of action accrues under FOIA. So this arises out of a wrongful denial, and I see that my time's up, most of our questions. Thank you. Thank you. Good morning, Your Honors. Gretchen Wolfinger for the Internal Revenue Service. I would first address the language of the release. If the court has any questions, we believe, as the district court held, that the language of the release was clear. Unequivocal, and obviously applies to the FOIA claim in this case. Now, if there are questions, I'll move on to the arguments made by opposing counsel about why the release is ineffective. Can you tell me what he's referring to? He says that there's a subsequent agreement, he calls it a Rule 26F agreement that abrogates the release. I can't find it in his brief, but maybe you can explain that. Yes, Your Honor. It's my understanding this is the argument that was made specifically in his reply brief, and which he refers to as an ovation argument. Now, I'd note that it was not raised below before the district court, and it was not raised in his opening brief, so it's raised, excuse me, it's waived. But what he's referring to is the 26F agreement entered into between the parties below regarding discovery and review of the record. Before anybody realized there was a release, is that fair to say? Yes. Yes. And I would argue that that's, I don't know what a judicial agreement is, although opposing counsel has described it. He cites cases involving novation. Well, it was approved by a court. It was approved by a district court at the time. Was it not? Yes, but I don't know. I know it was agreed to, but it was in the face of some dispute on whether there was compliance with a discovery order. There was an order to produce records. The IRS wasn't following through, to make it quick and dirty, wasn't following through, went to court on a complaint about that, and there was an agreement entered that said we'll start doing it on a rolling basis. Yes, but to specifically look at the novation agreement, I don't know if that can be... No, I'm not talking about that. I'm talking about the 26 that was in the district court. And I'm addressing that in the sense that it was an agreement between the Internal Revenue Service and Mr. Rogers. If that's considered, it can't be considered a novation of the original settlement agreement, which contained the release, because the Internal Revenue Service wasn't a signatory to that original settlement and release. It was the U.S. I think there are two arguments. The one is an estoppel. Look, you all agreed to this, and a judge blessed it. The second, the novation, I wasn't questioning you about that. If I could finish on the novation, it may play into your argument, Your Honor, or your questions. It is not a waiver or an estoppel because it's a procedural agreement among the parties. The opposing counsel cited novation cases, but I don't believe cited any cases saying that a 26-F agreement constitutes a novation or a waiver. Further, I believe the court should not interpret it as such because it would violate the Rules Enabling Act. And the Rules Enabling Act basically says that the rules of civil procedure can't undermine or affect substantive rights of the parties, and the 26-F agreement, if interpreted that way, would undermine the government's substantive right to contract. No, it would not. If you waived your rights under the contract or whatever release agreement you had made, you can waive—you didn't timely assert the defense of the release when this 4-year agreement was submitted, and almost 2 years later, you try to bring it up. Why wasn't that a—why don't those facts constitute a waiver or a forfeiture? Because there's no timely objection. In fact, you gave your opposing counsel reason to believe that you would comply with the request by entering into this rolling agreement with these status reports or whatever you want to call it. Yes, Your Honor. My previous answer was specifically regard to the 26-F discovery agreement. With regard to opposing counsel's more general argument about waiver, that the release was raised too late, the district court got it absolutely correct. He said that he had discretion under Rule 15 to permit an amendment or a late raising of the affirmative defense of release—that's an abusive discretion standard—and opposing counsel hasn't been able to show either surprise or prejudice. He clearly knew about— Well, they should have shown surprise since you went along with them without objection to the FOIA request for all that time. I'm flabbergasted that all this doesn't make an impression on a district judge. The FOIA request was in November of 2012. They start a lawsuit in August of 2013 for the FOIA, and the IRS doesn't get around to raising the matter of the release until November of 2014, and there's no explanation for that delay. I just don't understand it. There is an explanation in the record, although it may not be explicit. If you look at the original FOIA request to the Internal Revenue Service, that is handled by FOIA employees or a FOIA unit, not in the U.S. Attorney's Office when it comes to the Internal Revenue Service. They are distanced from what happened in the Western District of Pennsylvania. Their job is to look at a FOIA request, respond to it, and if you look at the— Didn't you have a counsel involved in all of this, especially once the lawsuit was filed? And he would have known about the release agreement, your counsel. If I could finish. So the IRS people handled it in terms of a FOIA response, and if you look at the documents attached to the complaint, they estimated there were about 500,000 documents they needed to look at, and they were also under time pressures. They asked for several extensions to respond to the FOIA request. It was clear they were focused on responding to the request. When it gets to active litigation in the district court, there was some turnover among the attorneys on the case. The attorneys also were coming out of Washington, D.C. They were not coming out of the U.S. Attorney's Office in the Western District of Pennsylvania. So the government did finally focus on the issue of the release, and when they did, they timely brought it to the attention of the court. It could not have been a... Well, it wasn't timely. Timely when... Measure. Timely upon discovery. Yes. Timely upon discovery. Further, there's no surprise in the sense that Mr. Rogers was a signatory to the release. So when he heard about the release, that wasn't a surprise. Second, it wasn't a surprise in the sense that he had more than ample... It was a surprise to him that you were invoking the release after not invoking it for that extent of time. It was a surprise in the common use of the term, but not a surprise in the legal sense in that he had time to respond, ample time to respond, to the summary judgment motion and rebut the government's contention that the release applied. He further wasn't prejudiced in the sense that, as we argued in our brief, under the rolling production, he got documents that he would not have been entitled to. And further, even if he had been denied documents at the initiation of the case, on the basis of the release, based on what's happened here today, he would have still gone into district court and challenged the applicability of the release. So he would still have been in federal court one way or the other. So there's been no prejudice. Litigation expense alone, without more, is not enough to demonstrate prejudice. Was this argument about the 26F agreement, was that raised in district court? Not specifically, either in the way it's been presented here as an official novation, and it also was not raised in the opening brief. It was not until the reply brief that that argument was specifically made. I would also note that with regard to the estoppel prong, the government can't be estopped on the same basis as litigants, that you have to show affirmative misconduct. And I think, although Your Honor is not pleased with the IRS's and the government's performance in this case, there's certainly no indication of any affirmative misconduct. As Judge Cook termed it, there was sort of a whoops, which is a mistake, inadvertence, negligence, but there's certainly no affirmative misconduct here that would support stopping the government from raising the release. I'd also note that under both Pennsylvania and Ohio law, specifically the Benesh case, that accrued or unaccrued claims can be released. That Pennsylvania law states that if contracting parties are sophisticated and represented by counsel, you should follow and apply the unambiguous terms of the release. And here, as the Court has noted, it's a very broad, extremely broad general release, which would cover a FOIA claim. There's no public policy against waiving a FOIA claim, as we noted in the Thayer case. If a criminal defendant can waive a FOIA claim with the attendant constitutional protections given to criminal defendants, there's certainly no reason that a FOIA claim couldn't be considered to be waived under a general release in a civil case. You see counsel's argument with respect to the terms of the release and for, and he focuses on for the FOIA request. This is the argument he just posed. What are the words? The words of the release are quite broad. He's saying arising out of does not save the IRS because it's for, and arising out of is the way I would look at it, doesn't overcome the specificity the way counsel wants to read it. So would you respond to that? I think that he's parsing the circumstances of this case much too narrowly. As we said in their brief, if there had not been a civil forfeiture case, there would not have been a FOIA request. He's clearly requesting documents that relate to, connect with, or arise out of the civil forfeiture cases. That's exactly what he's looking for. So I don't see how, aside from his narrow parsing of the circumstances of the case, he can escape the release language. If there are no further questions. Apparently not. He's not required to take the entire time. Thank you, Your Honor. First, I want to assure Your Honor, we did raise this. We argued our brains out about the subsequent agreement in the trial court. I didn't call it a novation. In the briefing contra to the motion for summary judgment, we talk about waiver. And we talk about it in several respects. Waiver by conduct was one thing we focused on, starting with the administrative process all the way to the end of waiving. Two was waiver by the subsequent agreement memorialized in the Rule 26F agreement and memorialized in an agreed court order. Then the third way they waived was by being in default for answer. The fourth way they waived was a course of performance performing the ruling production system. Next, I want to say the audacity of the IRS to justify its delay in raising this by claiming ignorance. Your Honor is correct that the government is going to say, I don't know, the right hand doesn't know what the left hand is doing, so they're not charged with knowledge. If you look in their brief, they snarkily say, oh, Rogers had lawyers. He should have known about the release. And we go, yeah, and you should have known, too, about the things that we're saying in this case. But do you quarrel with counsel's stance that the government, okay? I do. You know what I'm going to say? They had counsel. And when you look at the freedom of— No, no. Not about counsel. The stance that counsel offers is that one cannot stop the government just on negligence or failing to know. It has to—you have to show affirmative misconduct on the part of the government. Yeah, and I think the estoppel is my weakest of the three waiver-related arguments, Your Honor. And I argue in my brief there is intentional misconduct here, but I would put that way down on my list of things that I think carry the day in this case. We will, too, then. And when I get back to waiver, though, how many different ways did the government waive in this case—conduct before the lawsuit, during the administration, conduct after, by making the subsequent agreement, conduct by living in the course of performance of the subsequent agreement for many months, procedurally, by failure to file an answer that—where is the proper place to raise the affirmative defense? And then— Proper, preferred, but not required. But only excused if there is no, A, surprise, and B, prejudice, and we set forth in our brief that both are self-evident. With respect to surprise, I guess I would—it's true that your client absolutely knew about that release. Oh, yeah. Sure. It's how he got his money back. But we absolutely knew that release had nothing to do with a subsequent, unaccrued, uncontemplated FOIA claim. And I do want to hit this— Is there any evidence that you filed in the district court to back up your claim of prejudice? Any affidavits of how much attorney fees you had incurred, anything like that? We filed my declaration. We did not put a monetary amount in on what he had incurred, but we made it clear that he endured the months of litigation, the negotiation of the agreements, the living through a hundred thousand pages of spreadsheets during this rolling production system. Where is your declaration? Is it in the summary judgment, the opposition to— We offered it in opposition to summary judgment. Yes, Your Honor. And I see that my time is up, so if there are questions, I would be glad to answer them otherwise. Apparently not. Thank you. Thank you. Case is submitted.